Austin P. Nagel, SBN 118247
Kirsten Martinez, SBN 310674
Bonial & Associates, P.C.
3160 Crow Canyon Place, Suite 215
San Ramon, California 94583
Telephone: (213) 863-6010
Fax: (213) 863-6065
Austin.Nagel@BonialPC.com
Kirsten.Martinez@BonialPC.com

Attorneys for Secured Creditor,
The Bank of New York Mellon FKA The Bank of New York, as Trustee for The Certificateholders of the CWMBS Inc., CHL Mortgage Pass-Through Trust 2006-OA5, Mortgage Pass Through Certificates, Series 2006-OA5, as serviced by NewRez LLC d/b/a Shellpoint Mortgage Servicing

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>Jose L Granados and<br>Victoria Ann Gutierrez Vaughn,<br><br><br><br><br><br><br>                                                    Debtors | Case No. 6:21-bk-15024-WJ<br><br>Chapter 13<br><br>**RESPONSE TO ORDER TO SHOW CAUSE**<br><br>Hearing:<br>Date:    November 7, 2022<br>Time:   1:30 PM<br>Place:   Crtrm 304<br>             3420 Twelfth Street<br>             Riverside, CA 92501 |

**TO THE HONORABLE WAYNE E. JOHNSON, UNITED STATES BANKRUPTCY COURT JUDGE, DEBTORS, DEBTORS' COUNSEL, THE TRUSTEE, AND OTHER INTERESTED PARTIES:**

Bonial and Associates PC and The Bank of New York Mellon FKA The Bank of New York, as Trustee for The Certificateholders of the CWMBS Inc., CHL Mortgage Pass-Through Trust 2006-OA5, Mortgage Pass Through Certificates, Series 2006-OA5, as serviced by NewRez LLC d/b/a Shellpoint

1

7768-N-6774

Mortgage Servicing ("Secured Creditor"), hereby respond in Opposition to the Court's Amended Order to Show Cause Regarding Sanctioning (1) Bonial & Associates, P.C. and (2) NewRez, LLC d/b/a Shellpoint Mortgage (the "Order to Show Cause") filed as docket number 94 in the above-captioned matter.

This Opposition is based upon the supporting Memorandum of Points and Authorities set forth herein, and the supporting Declaration of counsel Austin P. Nagel ("Nagel Decl.") filed herewith and all exhibits attached thereto. The Court's Order to Show Cause has raised the following issues at page 2 lines 7 thru 15:

**The "falsity" of the claimed arrearage of $7,933.38 forcing the Debtor to:**

**a.) File an Objection to the Claim,**
**b.) Delayed confirmation of the Debtor's plan, due to the failure of Secured Creditor to correct the "false information" contained in its Proof of Claim**

**I. Summary of Facts**

On September 21, 2021 Jose L. Granados and Victoria Ann Gutierrez Vaughn (hereafter referred to collectively as the "Debtors") filed for relief pursuant to Chapter 7 of the bankruptcy code. On February 28, 2022, pursuant to the Debtors' Motion, their case was converted from a Chapter 7 to Chapter 13. (See Dckt No. 30) On May 9, 2022, Secured Creditor filed its Proof of Claim as claim number 19-1. (See Exhibit "B" to Nagel Dec.) Secured Creditor set forth in its Proof of Claim that Debtors' account had "arrears" as hereafter explained in the amount of $7,933.38 as of the date Debtors converted their case from Chapter 7 to Chapter 13. On March 18, 2022, Secured Creditor objected to Debtors' Plan on the grounds that Debtors' Plan had failed to provide for the estimated arrears as of the date of the Debtors' conversion of their case from Chapter 7 to Chapter 13. (See Dckt No.: 53).

On June 2, 2022, Debtors Objected to Secured Creditor's Proof of Claim and set the matter for hearing on July 6, 2022. See Dckt No.:64. At the July 6, 2022 hearing on the Debtors' Objection to the Shellpoint Claim, Debtors insisted that it was inaccurate to include projected escrow shortages. The issue was also raised during the July 6, hearing that Secured Creditor might be even trying to double bill Debtors their projected escrow shortage by not only collecting such amounts post-petition from Debtors direct monthly payment, but also from the Trustee's monthly dividend paying down Debtors' arrears. (See Exhibit "A" attached to Nagel Decl, page 8, line 16 thru Page 11, line 7). As pointed out by counsel

for Secured Creditor at the July 6, 2022 hearing Secured Creditor was not attempting to double bill or to collect more from Debtors that what it was entitled to under the loan and security agreement, including the projected escrow shortage. (See Exhibit "A" attached to Nagel Decl, page 11, lines 10-13). Rather, Secured Creditor was simply trying to apprise Debtors of the projected escrow shortage in compliance with Official Form 410 A, that is a required attachment to the Proof of Claim, and in the "spirit of transparency" to impress upon the debtor the importance of addressing this ongoing obligation (See Exhibit "A" attached to Nagel Decl, page 11, lines 10-13). Secured Creditor notes that while the Official Form 410A requires disclosure of the projected escrow shortage as part of the pre-petition arrearage and allows the debtor the ability to cure this through the bankruptcy plan over 60 months, the alternative would be for this pre-petition projected escrow shortage to be collected over the next 12 months as part of the debtor's post-petition payment (as long as all parties agree this would not be considered a violation of the automatic stay).

As the July 6 hearing was reaching its conclusion the Court observed for the benefit of counsel for Debtors that service of the Objection to Claim was defective due to Debtors' failure to properly serve counsel for Secured Creditor. (See Exhibit "A" attached to Nagel Decl, page 18, lines 18-25).

Nevertheless, the hearing was concluded and a continued hearing date was set for September 26, 2022 at which time the Court strongly encouraged the parties to resolve not only the objection to confirmation to plan but the Debtors' objection to the Secured Creditor's Proof of Claim. However, if the objections were not resolved, the Court set a schedule for supplemental briefs to be filed. (See Exhibit "A" attached to Nagel Decl, page 16, lines 1-10).

On September 1, 2022, the parties filed their Stipulation Resolving Secured Creditor's Objection to Confirmation and the Debtors' Objection to Proof of Claim as Docket No.: 80. Pursuant to the terms of the Stipulation, all issues raised in both the Objection to Confirmation of Chapter 13 Plan and the Debtors' Objection to the SLS Claim were resolved. Moreover, under the terms of the Stipulation, the parties agreed to eachbear their own fees and costs incurred in preparing and responding to the aforementioned Objections. (See Exhibit "C" attached to Nagel Decl, para. 6).

//

//

## II    Legal Argument

### A. The Proof of Claim as filed was accurate without known falsities.

Secured Creditor filed its Objection to Confirmation of the Debtors' Chapter 13 Plan on the grounds that the Debtors' Plan failed to satisfy the full value requirement under 11 U.S.C. §1325(a)(5)(B)(ii), which requires full payment of Secured Creditor's pre-petition arrearage, including any pre-petition escrow shortage.

In support of Secured Creditor's position, it observes that in 1974 Congress enacted RESPA to govern the procedures to be followed in connection with escrow accounts established to ensure the payment of real estate taxes and insurance. Regulation X of RESPA provides for a twelve-month forward looking calculation/analysis to determine how much money must be deposited monthly into the escrow account to cover future taxes and insurance. RESPA Regulation X, 24 C.F.R. § 3500.17 (b) (generally describing the base escrow deposit and aggregate analysis), (c)(1)(ii) (generally describing the components of escrow) and (d)(1)(A) (2007) (explaining how to project a "trial balance"). RESPA allows a lender to conduct the general twelve-month analysis on many different occasions including at the inception of the loan, at the anniversary/end of each computation year, or on other dates of the lender's choosing. 24 C.F.R. § 3500.17 (c)(2) (analysis at beginning of the loan), (c)(3) (analysis at the end of the computation year), and (f)(1)(ii) ("The servicer may conduct an escrow analysis on other times during the escrow computation year").   As a part of this procedure, RESPA and Regulation X further authorize a lender to calculate and collect certain "advance deposits in escrow," to make up any shortage and/or to eliminate a deficiency in the escrow account that may occur over the projected 12 month period when a lender must disburse tax and insurance payments. 24 C.F.R. § 3500.17 (f)(1)(ii) and 12 U.S.C. § 2609(a)(2). A deficiency is generally defined as the negative balance in the escrow account while a shortage is defined by the amount by which the current escrow account balance falls short of the target balance at the time of the escrow analysis. 24 C.F.R. § 3500.17(b). Finally, RESPA further authorizes a lender to hold an escrow cushion equal to one-sixth of the total projected 12 month escrow disbursements in reserve and to add this amount into the total 12 month estimate of the necessary escrow payment. 12 U.S.C. § 1209. Consistent with the above stated Federal law and Federal Regulations and FRBP 3001(c)(2)(C), Part 3 of Official Form 410A attached to Secured Creditor's Proof of Claim expressly

instructs the Secured Creditor to state the "***Projected*** escrow shortage" (emphasis added) which in this case was stated to be $4,503.60. The balance of Secured Creditor's stated arrears consisted of $2,739.35 in Principal and Interest Due, $547.96 in Prepetition fees due, and $142.07 in "***Escrow*** deficiency for funds advanced" (emphasis added).

The various above-described sections of Regulation X of RESPA, when combined with FRBP 3001(c)(2)(C), require a lender to conduct a 12 month future looking escrow analysis upon the filing of a borrower/debtor's bankruptcy and to recover amounts as necessary to bring the escrow account in balance as authorized by RESPA.

Contractually, Debtors' Deed of Trust at paragraph 3 (See Exhibit "B" attached to the Nagel Dec filed concurrently herewith that provides:

> Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise In accordance with applicable law.

Courts have specifically supported this recovery by holding that lenders have a pre-petition enforceable claim against a debtor under 11 U.S.C. 101(5) to recover any unpaid escrow deficiency, escrow shortage or amounts due to maintain the relevant escrow cushion under RESPA. *Johnson v. Home State Bank*, 501 U.S. 78 (1991); *In re Rodriguez*, 629 F.3d 136 (3rd Cir. 2010); *Campbell v. Countrywide Home Loan, Inc.*, 545 F.3d 348 (5th Cir. 2008) (recovery of escrow deficiency and shortage as pre-petition arrears through proof of claim); 12 U.S.C. § 2601 et. seq. (recovery of escrow cushion/reserve allowed). *See also*, *In re Zotow*, 432 B.R. 252, 260 (B.A.P. 9th Cir. 2010).

Secured Creditor's inclusion of both the "***Projected*** escrow shortage" and the "***Escrow*** deficiency for funds advanced" complies with Official Form 410 A, attached to Secured Creditor's subject Proof of Claim. While the inclusion of these components in the Proof of Claim might be perplexing, their inclusion is in fact prescribed by the drafters of Official Form 410 A and authorized under the above cited authorities. Official Form 410A Instructions specifically detail the *"Projected escrow shortage"* and the required amount to be listed in Part 3 as part of the pre-petition arrearage:

Insert the *Projected escrow shortage* as of the date the bankruptcy petition was filed. The *projected escrow shortage* is the amount the claimant asserts should exist in the escrow account as of the petition date, less the amount actually held. The amount actually held should equal the amount of a positive escrow account balance as shown in the last entry in Part 5, Column O.

This calculation should result in the amount necessary to cure any prepetition default on the note or mortgage that arises from the failure of the borrower to satisfy the amounts required under the Real Estate Settlement Practices Act (RESPA). The amount necessary to cure should include 1/6 of the anticipated annual charges against the escrow account or 2 months of the monthly pro rata installments due by the borrower as calculated under RESPA guidelines. The amount of the projected escrow shortage should be consistent with the escrow account statement attached to the *Proof of Claim*, as required by Rule 3001(c)(2)(C).

**B. Sanctions Pursuant to Rule 9011(b)(1)of the Federal Rules of Bankruptcy Procedure**

Secured Creditor submits that in view of the above cited authorities the Shellpoint Claim filed by Secured Creditor did not contain any known falsity but rather, contained actual arrears specified in Official Form 410A and/or were in accord with Regulation X of RESPA and all issues surrounding the filing of the Shellpoint Claim were satisfactorily resolved by the parties including but not limited to their agreement to waive fees and cost.(See Exhibit "C" attached to the Nagel Decl. page 3, lines 9-20).

CONCLUSION

For the reasons set forth above, Secured Creditor's respectfully submits that its Proof of Claim was timely filed and complied with applicable provisions of the Bankruptcy Code and federal law. Moreover, the parties have amicably resolved Secured Creditor's Objection to Confirmation of Chapter 13 Plan and the Debtors' Objection to Secured Creditor's Proof of Claim and have agreed to bear their own fees and costs.

//
//
//
//

**WHEREFORE,** Secured Creditor respectfully requests that:

1. The Order to Show Cause be vacated and
2. That senior officers from both Bonial & Associates PC and Shellpoint Mortgage Servicing be excused from appearing at the November 7, 2022 Status Conference.
3. For other such relief as this Court deems just and proper.

Dated: October 21, 2022

                                       Respectfully Submitted,
                                       Bonial & Associates, P.C.

By:    */s/Austin P Nagel*
      Austin P Nagel
      Attorneys for Secured Creditor

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**14841 Dallas Parkway, Suite 425**
**Dallas, Texas 75254**

A true and correct copy of the foregoing document entitled (*specify*): **OPPOSITION TO DEBTOR'S MOTION TO VALUE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **October 21, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

| | | |
|---|---|---|
| *U.S. Trustee* | *Trustee* | *Debtors' Attorney* |
| ustpregion16.rs.ecf@usdoj.gov | Rod Danielson | Gilbert A. Diaz |
| | Notice-efile@rodan13.com | gilbertdiaz@lawyer.com |

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) **October 21, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

*U.S. Bankruptcy Court Judge*
Honorable Wayne E. Johnson
United States Bankruptcy Court
3420 Twelfth Street, Suite 384
Riverside, CA 92501-3819

*Debtors*
Jose L. Granados
Victoria Ann Gutierrez Vaughn
6158 Royal Diamond Ct
Corona, CA 92880

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| **October 21, 2022** | **Corey Banks** | */s/Corey Banks* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

7768-N-6774

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**