EXHIBIT A

1                   UNITED STATES BANKRUPTCY COURT

2                   CENTRAL DISTRICT OF CALIFORNIA

3                          --oOo--

4  In Re:                    ) Case No. 6:21-bk-15024-WJ
                             )
5  JOSE L. GRANADOS and VICTORIA ) Chapter 13
   ANN GUTIERREZ VAUGHN,     )
6                            ) Riverside, California
              Debtors.       ) Wednesday, July 6, 2022
7  _____) 2:00 p.m.

8                              HRG RE OBJECTION TO CLAIM
                               NUMBER 19 FILED BY MUKTA SURI
9                              ON BEHALF OF THE BANK OF NEW
                               YORK MELON

10

11                   TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE WAYNE JOHNSON
12              UNITED STATES BANKRUPTCY JUDGE

13 APPEARANCES:

14 For the Debtor:           GILBERT A. DIAZ, ESQ.
                             Law Office of Gilbert A. Diaz,
15                             Jr.
                             3685 Main Street, Suite 325
16                           Riverside, California 92501
                             (951) 682-1245

17

18 For the Creditor, Bank of  AUSTIN P. NAGEL, ESQ.
     New York Mellon:        Bonial & Associates, PC
19                           3160 Crow Canyon Place
                             Suite 215
20                           San Ramon, California 94583
                             (213) 863-6010

21

22 Court Recorder:           Yvonne Carter
                             United States Bankruptcy Court
23                           3420 Twelfth Street
                             Riverside, California 92501

24
   Proceedings recorded by electronic sound recording;
25 transcript produced by transcription service.

ii

1  Transcriber:                    Briggs Reporting Company, Inc.
                                   9711 Cactus Street
2                                  Suite B
                                   Lakeside, California 92040
3                                  (310) 410-4151

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

1    RIVERSIDE, CALIFORNIA  WEDNESDAY, JULY 6, 2022  2:00 PM

2                          --oOo--

3        (Call to order of the Court.)

4            THE COURT:  Eleven, Jose Granados, Victoria

5    Vaughn, Case Number 21-15024.

6            MR. DIAZ:  Good afternoon, your Honor.  Attorney

7    Gilbert Diaz on behalf of Debtors.

8            THE COURT:  Good afternoon.

9            MR. NAGEL:  Good afternoon, your Honor.  Austin

10   Nagel appearing on behalf of the Bank of New York Mellon.

11           THE COURT:  Mr. Diaz, it's your motion.  You may

12   proceed.

13           MR. DIAZ:  Your Honor, we submit on our paperwork.

14   I -- we did have some discussion -- let me retract that

15   statement.  Let me retract the statement I just made on the

16   paperwork.

17           We did have some conversations with creditor's

18   counsel regarding the filing an amended claim.  I believe

19   the position of creditor's counsel is that there are going

20   to be no arrears pursuant to the accounting and with the

21   actual factual basis of the history with my clients.  That

22   was one of our concerns moving forward, trying to get this

23   Chapter 13 confirmed.

24           And then the other discussion was there were some

25   lingering costs or late fees.  I'm not sure exactly how they

*Briggs Reporting Company, Inc.*

2

1  were accounted for, as they didn't file an opposition in the

2  amount of $547.  My clients were amenable to that, but so

3  long as they're not phrased as arrearages.  As our record

4  and our evidence, we want the Court to consider showing

5  there's no arrears, and that my clients are up to date with

6  their first mortgage.  This is their primary mortgage, your

7  Honor.

8          But we weren't able to get anything filed in time

9  before this hearing.  We had -- I had e-mailed our

10 acceptance of some sort working offer on the 30th, but we

11 didn't hear back from counsel until this morning.

12         But other than that, we submit on our motion as

13 filed with the supplement of what I just informed the Court

14 of our discussions that -- and Mr. Nagel can confirm or deny

15 if he's agreeing that there are no arrearages in this

16 account, your Honor.

17         THE COURT:  What do you think should happen today?

18         MR. DIAZ:  I was -- I had discussed with Mr.

19 Nagel, your Honor, that if he just agrees -- or that with

20 our -- we're not asking that he adjust the principal.  We're

21 not asking that we adjust that they a secured creditor for

22 the first mortgage.  And if they want to file an amended

23 claim after the fact, but we need some relief in the form

24 of, if the Court would consider grant -- sustaining our

25 objection, so -- finding there are no arrears for purposes

*Briggs Reporting Company, Inc.*

3

1  of confirmation, which is set for later this month on the

2  25th, your Honor.  So that would necessary to move forward,

3  whether or not there are arrears in this matter.

4        So, we -- my clients need some relief so the

5  Trustee also will know what to recommend for confirmation

6  based on whether there are arrears or not.

7        THE COURT:  You want disallowance of the arrears

8  of 7,933.38?

9        MR. DIAZ:  Yes, your Honor.

10       THE COURT:  Mr. Nagel?

11       MR. NAGEL:  Your Honor, consistent with Mr. Diaz'

12  observations, we are in agreement.  Basically, what the

13  composition of the claim was, projected escrow, projected

14  escrow funds that makes up the vast, the bulk of the claim,

15  we'd be amenable to those being removed.  And as Mr. Diaz

16  reflected, as far as those costs, we could provide those in

17  an amended proof -- or we can address those by way of

18  stipulation for those to be paid by the Debtor as -- post-

19  petition.  That's eliminating all of the arrears.

20       THE COURT:  Are you telling me, Mr. Nagel, that

21  you agree that the 7,933.38 should be disallowed, but you

22  have something else you want?  Is that what you're saying?

23       MR. NAGEL:  I'm saying that it can be amended to

24  reflect a zero arrears, your Honor.

25       THE COURT:  How is that different than what I just

4

1  said?  Is there something else going on here that I'm

2  missing?

3          MR. NAGEL:  No, your Honor.  I'm not trying to

4  play a game of semantics.  Mr. Diaz and I have discussed

5  this.  For lack of a better description, the concern that my

6  client has in these, when they file their proofs of claim

7  with these projected escrow funds that are due, they provide

8  those so there's, there's transparency with the borrower

9  that those funds will be coming due and owing in the coming

10 year.

11         With that understanding with the Debtor, which we

12 of course have with Mr. Diaz and the Debtor in this case, we

13 can amend the plan -- we can amend the claim to provide for

14 that.  Usually we do it by stipulation, your Honor, just

15 with the idea that the Debtor's acutely aware that they have

16 these projected escrow obligations that have to be paid for

17 in the coming year.

18         There is also the $547.96 that my notes reflect

19 that Mr. Diaz indicated can be paid by the Debtor post-

20 petition.

21         THE COURT:  Mr. Diaz, one way to interpret what

22 the two of you are telling me is that you may seem to think

23 the 7,933.38 goes away forever, whereas Mr. Nagel believes

24 it will have to be paid this year in addition to the monthly

25 payments.

5

1     MR. DIAZ:  Your Honor, thank you for allowing me

2 to clarify Debtor's position, our understanding.  So, our

3 understanding is arrears means past due mortgage payments,

4 where they do impound taxes and they do impound insurance.

5     If Mr. Nagel is saying that their concern is about

6 future escrow payments or -- and my understanding, currently

7 there's a surplus, that should be designated in a separate

8 section or notated on their claim.  But how they filed their

9 claim, your Honor, was that it was arrears, meaning past due

10 and owing.

11     So, that is my confusion as well, is that we

12 understood, we indicated in our bankruptcy petition that the

13 taxes and insurance are impounded, and it's implied they're

14 making those through their regular monthly mortgage payment.

15 But when they filed their claim, they put it as arrears,

16 indicating to Debtors, and I assume to the Court, that this

17 was past due mortgage payments that were due and owing and

18 not paid.

19     THE COURT:  Mr. Nagel, if the Debtors are making

20 all of their monthly payments on time and in the right

21 amount, are you saying in addition to that another eight

22 grand will need to be paid this year?

23     MR. NAGEL:  The way I interpret it, your Honor, is

24 if -- what happens is, an escrow projection is made and

25 provided to the Debtor.  And it is, it is a bit of a

*Briggs Reporting Company, Inc.*

6

1 semantic hurdle to address it.  While they will become due

2 prospectively, they have been advised, the Debtors have been

3 advised of those obligations, because the make the escrow

4 projections.  So I --

5          THE COURT:  Let me try my question -- let me try

6 my question --

7          MR. NAGEL:  Okay.  Thanks.  I apologize.

8          THE COURT:  Let me try my question again this way.

9 Focus real closely on this question.  Do the Debtors need to

10 do anything other than keep making on time the regular

11 monthly payment in whatever the current amount is?

12          MR. NAGEL:  No, your Honor.

13          THE COURT:  So, why list the 7,933 as an arrearage

14 in the first place?  Well, actually, why was there an

15 objection to confirmation?

16          MR. NAGEL:  Your Honor, I think it falls within,

17 within the ambit of the idea that these are things that they

18 want the Debtor to be acutely aware of, that they will be

19 ongoing obligations.  That the -- and I recognize the

20 contract provides for the -- that the Debtor will make the

21 contractual installment against the note, plus the impounded

22 funds.  And I think in my client's experience, those are

23 sometimes lost, your Honor, by the borrower.

24          THE COURT:  I guess I need more of an explanation.

25 I don't -- I'm not convinced --

7

1          MR. NAGEL:  Your Honor, if it would please the

2  Court --

3          THE COURT:  -- I'm not convinced that the Debtors

4  are losing something here.  I'm trying to understand the

5  lender.  So if we agree, if the Debtors have been making all

6  their payments on time in the right amount -- so, if the

7  Debtors have not been making all their payments on time in

8  the right amount, tell me now.

9          If they have been making all of their payments on

10 time in the right amount, why was there an objection to

11 confirmation with the 7,933 number?

12         MR. NAGEL:  The objection to confirmation, the

13 7,933 number, does contemplate a prospective obligation of

14 the Debtor in the coming year.  Those -- that sum of money

15 has -- the Debtor has been informed of that ongoing

16 obligation.

17         THE COURT:  But by filing the objection, aren't

18 you asking them to keep, to continue making the monthly

19 payments and include a provision in the plan that provides

20 for payment of another 7,933?

21         MR. NAGEL:  That is not the way we -- and I think

22 the best way for me to explain it, your Honor, is to --

23 looking at the Official Form 410 on the proof of claim,

24 where there's a breakout of the amount of the principal

25 obligation and interest and escrow.  And that, what is part

8

1  of the claim, is the escrow, projected escrow for the coming

2  year.  But do I believe that the borrower has been making

3  those payments?  Yes, I do, your Honor.  And to assist the

4  Court, it's claim 19-1.

5      (Pause.)

6         THE COURT:  All right.  So, I'm looking at this

7  pleading that you filed, Mr. Nagel, on March 18th, docket

8  number 53, objection to confirmation of the plan.

9         And on page two, lines eight through nine -- eight

10  through 10, you say:

11             "At the time of the bankruptcy

12             petition filing secured creditor's claim

13             was an approximate amount of 415,000,

14             including an estimated arrearage in the

15             amount of 7,933.38."

16         I haven't heard any version of you in which that

17  language makes sense.  So, if -- and here's what I mean by

18  that.  You seem to be indicating to me that the use of the

19  word "arrearage" was wrong.  That that -- it sounds like

20  we're very close to all of us agreeing that the word

21  "arrearage" there was just flat out wrong.  That there was

22  no arrearage.

23         You seem to be indicating that this is a future

24  amount that's due, but you don't file an objection to claim

25  -- you don't file an objection to confirmation to say, the

9

1  Debtors must continue to make their monthly payments.  We --

2  that's a given.  You would never file an objection to

3  confirmation saying, you can't confirm it unless the Debtors

4  keep making their regular payments on time.  That would be a

5  waste of everybody's time because that's a requirement.

6        So, was this objection designed to have them pay

7  in addition to the regular monthly payments an additional

8  7,933?

9        MR. NAGEL:  No, your Honor.  It was designed I

10  believe two-fold.  As the proof of claim reflects, and I'm

11  looking at it, page two of 46, the amount necessary to cure

12  the default is the 7,933.38 figure.  That was the basis upon

13  which we filed our objection, and attached the proof of

14  claim.

15        What that translates to, however, is I do believe

16  a bit of a semantic tightrope, but it's dealing with the

17  projected escrow monies that will be owing in the

18  forthcoming year.  And if the Court would like me to brief

19  the issue in further detail between now and the confirmation

20  hearing, I'd be happy to do so.

21        THE COURT:  Does the creditor, does your client

22  believe there was any arrearage prepetition?

23        MR. NAGEL:  The -- those arrears would be the late

24  charges that have been assessed the account of 547.96.

25        THE COURT:  Okay.  Other than the 547?

10

1        MR. NAGEL:  No, your Honor.

2        THE COURT:  Okay.  And so, yeah, I -- this

3  pleading you filed is very perplexing.  You could make the

4  argument it's misleading.  I don't know what to make of this

5  sentence.  It just seems to be not descriptive of reality.

6  I mean, clearly, there's no arrearage.

7        Okay.  So, it sounds like we agree there's no

8  arrearage other than the $500 in late fees.  So that part of

9  this language is wrong.  And then to the extent, to the

10 extent that this is designed to say, hey, there's an escrow

11 account that has to be funded in the future, why tell me

12 that?  Why mention the topic at all if the regular monthly

13 payment, which the Debtor is making on time, will fund that?

14        MR. NAGEL:  Your Honor, I think it's -- candidly,

15 I believe it's out of an abundance of caution that there be

16 no -- candidly, I believe it's an act of transparency.  That

17 post-petition to be putting -- making sure that there's --

18 the information is communicated to the borrower.  That these

19 escrow funds that you've been advised of will be forth --

20 will be owing.

21        THE COURT:  Well --

22        MR. NAGEL:  And, your Honor, as I offered before,

23 I'd be more than happy to provide a supplemental brief on

24 the issue before the confirmation hearing later this month.

25        THE COURT:  So then, look at -- so then if you

11

1   look at paragraph two of your pleading, you're asking for,

2   you're asking for another 7,933.  You're asking that the

3   Debtors be ordered as part of the confirmation process to

4   pay an additional 7,933 in addition to the regular monthly

5   payments.

6           MR. NAGEL:  That is not the design of the

7   allegation, your Honor.

8           THE COURT:  Okay.  Well, I --

9           MR. NAGEL:  So that would be -- that would be,

10  simply be -- that would be -- not be the design nor the

11  intent of any -- there would be no intent there to collect

12  that sum of money, other than in the context of the escrow

13  funds that are due in in the coming year.

14          THE COURT:  So, as I listen to your comments, Mr.

15  Nagel, it sounds like what's going on is that the Debtor,

16  the borrower, like so many borrowers, a portion of its

17  monthly payment will go towards insurance and real estate

18  taxes, and will go into an escrow account to fund that.  And

19  every months some portion of that monthly payment goes into

20  that escrow and it's funded.  And then at the appropriate

21  times, payments are made out of the escrow account.

22          I mean, that's -- there's nothing unusual about

23  that.  And I suppose if you wanted to file a one-sentence

24  pleading that said, the Debtors are current -- this is going

25  to be more than one sentence.  One paragraph.  The Debtors

12

1   are current.  They've made all their payments on time in the

2   right amounts.  And we remind you that, just like we did

3   before bankruptcy, we used a portion of those funds to pay

4   real estate and insurance.  We're going to continue to do

5   that post-petition.  Please bear that in mind.  End of

6   pleading.  Is that what you intended?

7           MR. NAGEL:  I think that's a, would be an accurate

8   translation of the intent, yes.

9           THE COURT:  Okay.

10          MR. NAGEL:  And I think -- and I concur with the

11  Court, that it would be -- there would be a more artful way

12  to doing it than as has been set forth in the objection.

13          THE COURT:  Yeah.  Yeah.  So, I would say that

14  this pleading that was filed, and don't take this

15  personally, Mr. Nagel, this pleading that's been filed, your

16  objection, is wildly misleading.  The difference between

17  your pleading and what I just said are enormous, okay.

18          So, yes, I'll give you an opportunity to brief

19  this some more.  And it sounds like you probably do want to

20  work out a stipulation with respect to the late fees.

21          Let's see.  Today's the, today's the 6th.

22  Confirmation hearing is like two-and-a-half weeks away.  I'm

23  inclined to bump back the confirmation a month to give a

24  little bit of extra time to work on this.

25          What are your thoughts, Mr. Diaz?

13

1          MR. DIAZ:  Your Honor, I would just like to as --

2    state to the Court, as we filed as Exhibit Number 7 in our

3    objection.  Exhibit Number 7 is a true and correct copy that

4    my client received from the creditor, Shellpoint.  And the

5    date, statement date is May 11th, 2022, with a payment due

6    date.  This was for the June payment of this year.  And it

7    doesn't state that there are any fees or charges.

8          We have the principal -- so their normal payment

9    is 3,545.  This month it's a little bit lower again, because

10   I mentioned briefly we assume, based on information and

11   belief, that there was a surplus in the escrow account.  But

12   $2,080.36 principal, 659.39 interest, and 692.64 escrow.

13   Total monthly payment, 3,432.39.  Under total fees charges,

14   zero.  Past unpaid amount, zero.

15         So, I'm not understanding where this -- that's

16   what I said, if they would have filed an opposition or if

17   they would have 547 in their claim, we could have thoroughly

18   objected to it as well.

19         But in the meantime, my clients are having to pay.

20   This is going to -- we anticipate to be a 100-percent plan,

21   your Honor, but it's going to be based on the total

22   outstanding claims.  And because we've had this arrearages

23   since the -- this was filed in September, my clients are

24   paying an increased plan payment.  And when they're -- we're

25   getting statements from them showing zero dollars due for

14

1 unpaid amount and zero for fees and charges, I'm not

2 understanding what is -- where this 547 is going to come

3 from.  And it hasn't been mentioned before.  It could have

4 been in their claim.  It could have been in 19.

5          So I'm just trying to advocate for my clients,

6 that we wanted to get this settled.  The Trustee was going

7 to be filing a recommendation today.  Their deadline was the

8 11th for their proposed confirmation terms and to have our

9 hearing on the 25th.  So, I'm not sure what Mr. Nagel's

10 going to brief, and I'm not -- and if he's agreeing to the

11 Court that there are no arrearages, I'm not sure where the

12 547's going to come out of.

13          And I mentioned, too, that there was an extra

14 payment for April.  That was in my moving paperwork.  And

15 there -- so there is even a surplus of funds with the

16 creditor with the first mortgage, where -- in the amount of

17 $3,545, that would more than cover those -- that 547.  There

18 was a payment made April 4th, and then there was a payment

19 made the end of April.  And then --

20          THE COURT:  All right.  Anything else, sir?

21          MR. DIAZ:  No, your Honor.

22          THE COURT:  All right.  I'm going to continue this

23 to my next confirmation hearing, which will be on September

24 26th.  That will give you time to work this out.

25          To the extent that you seek today to have me

15

1  resolve the 547 issue, I decline that.  The parties should

2  attempt to figure it out first.  In terms of how this comes

3  to me procedurally, we have this odd objection, which Mr.

4  Nagel and I have had a long heart-to-heart talk about, which

5  does seem to be, to be, well, misleading.

6          Mr. Nagel, I just, I have to say, I think it is a

7  misleading objection.  So you want to bear that in mind for

8  future ones.  It's certainly not -- you know, when I read

9  this type of objection, normally I take it at face value.  I

10 means, failure to make payments prepetition.  There is

11 arrearage.

12         So, this pleading does not seem to apply to the

13 current circumstances based on your comments today.  So

14 you're going to want to revised that.  But I'm not going

15 down that road again to rehash it.  Mr. Nagel has heard me.

16 The point of me mentioning it is, this came first.  I got

17 this pleading first.

18         And then, Mr. Diaz, you didn't actually respond to

19 it.  What you did was you went out and you filed an

20 objection to claim, which you didn't serve on Mr. Nagel.  So

21 I was kind of surprised that he appeared today.  That's

22 great.  He's here.  But I don't think procedurally you're in

23 a place today where -- you seem from your last set of

24 comments, where you want to drill this down to a final

25 ruling.  That's not going to happen today.

1          You and he should work on coming up with a

2   stipulation.  If you can't, that's fine.  If you can't reach

3   an agreement, that's fine.  I will continue this and the

4   confirmation hearing to September 26th.  I will set them for

5   11:00 o'clock on September 26th.

6          And, you know, make whatever progress you can, and

7   then I'll issue a scheduling order.  The scheduling order

8   will require both of you to file further pleadings telling

9   me where you're at in terms of resolving this or what your

10  current positions are if you haven't resolved it.

11         If you put together a stipulation and order that

12  everybody agrees to, the stipulation and order can provide

13  for that the pending objection to claim is resolved on that

14  basis, as well as the objection to confirmation.  I mean,

15  these stipulations should address both.  And that's my

16  ruling for today.

17         Anything else, Mr. Diaz?

18         MR. DIAZ:  Your Honor, can I just get

19  clarification from Mr. Nagel from the Court.  On the proof

20  of claim that we are here on, claim 19, under section three

21  says, "where should notices be sent to creditor."  And be

22  served the Mukta Suri of New Red, LLC (phonetic), a P.O. box

23  in Greenville, South Carolina.

24         THE COURT:  Mr. Diaz, you didn't serve Mr. Nagel.

25  I understand you served the creditor, but Mr. Nagel filed

1 the objection to confirmation before you filed the objection

2 to claim.  That's what I was saying a moment ago.  Mr.

3 Nagel's not on the service list.

4         MR. DIAZ:  Yes, your Honor.  So I just wanted to

5 make sure going forward that do I -- am I serving both of

6 these individuals then at this point?  Is that what the

7 Court is requiring?

8         THE COURT:  You should -- Mr. Nagel had a pending

9 objection to confirmation.  You should serve him with any

10 pleading that pertains to that.

11         MR. DIAZ:  Yes, your Honor.

12         THE COURT:  Okay.  As well as the creditor, just

13 like the Debtor and counsel for the Debtor get all

14 pleadings.  But as I said, you didn't file a -- you didn't

15 file a document styled as a response to the objection to

16 confirmation.  You clearly intended this objection to claim

17 to be responsive to that, but you didn't serve it on the

18 attorney who you're responding to.  That was my point.

19         MR. DIAZ:  Yes, your Honor.

20         THE COURT:  Okay.  Anything -- go ahead.

21         MR. DIAZ:  Nothing further, your Honor.

22         THE COURT:  All right.

23         Mr. Nagel, was there anything else you wish to

24 address, sir?

25         MR. NAGEL:  No, your Honor.  Thank you.

18

1          THE COURT:  All right.  September 26th at 11:00.

2   You'll see two scheduling orders, one pertaining to this

3   matter and one pertaining to confirmation.

4          MR. DIAZ:  Thank you, your Honor.

5          THE COURT:  Thank you.

6          MR. NAGEL:  Thank you.

7      (Proceedings concluded.)

8

9

10         I certify that the foregoing is a correct

11  transcript from the electronic sound recording of the

12  proceedings in the above-entitled matter.

13

14  /s/ Holly Steinhauer        9-30-22
    Transcriber                 Date

15

16

17

18

19

20

21

22

23

24

25