Exhibit B

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | Jose L. Granados |
| Debtor 2 (Spouse, if filing) | Victoria Ann Gutierrez Vaughn |
| United States Bankruptcy Court for the: | Central    District of    California (State) |
| Case number | 6:21-bk-15024-WJ |

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1:    Identify the Claim

| | | | |
|---|---|---|---|
| 1. | Who is the current creditor? | THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK,AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWMBS INC., CHL MORTGAGE PASS-THROUGH TRUST 2006-OA5, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-OA5 | |
| | | Name of the current creditor (the person or entity to be paid for this claim) | |
| | | Other names the creditor used with the debtor | |
| 2. | Has this claim been acquired from someone else? | ☑ No ☐ Yes. From whom? | |

| | | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|---|---|
| 3. | Where should notices and payments to the creditor be sent? Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | NewRez LLC d/b/a Shellpoint Mortgage Servicing<br>Name<br>PO Box 10826<br>Number    Street<br>Greenville, South Carolina 29603-0826<br>City    State    ZIP Code<br>Contact phone    800-365-7107<br>Contact email    mtgbk@shellpointmtg.com<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one): | NewRez LLC d/b/a Shellpoint Mortgage Servicing<br>Name<br>PO Box 10826<br>Number    Street<br>Greenville, South Carolina 29603-0826<br>City    State    ZIP Code<br>Contact phone    800-365-7107<br>Contact email    mtgbk@shellpointmtg.com |

| | | | |
|---|---|---|---|
| 4. | Does this claim amend one already filed? | ☑ No ☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____ MM / DD/ YYYY | |
| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☑ No ☐ Yes. Who made the earlier filing? _____ | |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6.** **Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: <u>4549</u>

**7.** **How much is the claim?**    $415,577.71 .

**Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8.** **What is the basis of the claim?** Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as health care information.

<u>Money Loaned</u>

**9.** **Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of Property:**

☑ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe:    <u>6158 Royal Diamond Court, Corona, California 92880</u>

**Basis for Perfection:**    <u>Recordation of Lien</u>

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $

**Amount of the claim that is secured:**    $415,577.71

**Amount of the claim that is unsecured:**    $    (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $7,933.38

**Annual Interest Rate** (when case was filed)    <u>2.000000%</u>

☑ Fixed

☐ Variable

**10.** **Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $

**11.** **Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: 

Official Form 410
7768-N-6774

**Proof of Claim**

page 2

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | Amount entitled to priority |
|---|---|---|---|---|
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | | |

|  |  | Amount entitled to priority |
|---|---|---|
| ☐ | Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| ☐ | Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| ☐ | Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| ☐ | Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| ☐ | Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| ☐ | Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $ _____ |

\* Amounts are subject to adjustment on 04/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date _____05/09/2022_____
　　　　　　　　　　　MM / DD / YYYY

/s/ Mukta Suri
　　　　Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Mukta Suri | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Authorized Agent for NewRez LLC d/b/a Shellpoint Mortgage Servicing | | |
| Company | Bonial & Associates, P.C. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | P.O. Box 9013 | | |
| | Number        Street | | |
| | Addison | Texas | 75001 |
| | City | State | ZIP Code |
| Contact phone | (972) 643-6600 | Email | POCInquiries@BonialPC.com |

# Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case number: | 6:21-bk-15024-WJ | Principal balance: | $405,297.36 | Principal & interest due: | $2,739.75 | Principal & interest: | $2,739.75 |
| Debtor 1: | Jose L. Granados | Interest due: | $3,306.99 | Prepetition fees due: | $547.96 | Monthly escrow: | $787.22 |
| Debtor 2: | Victoria Ann Gutierrez Vaughn | Fees, costs due: | $547.96 | Escrow deficiency for funds advanced: | $142.07 | Private mortgage insurance: | |
| Last 4 digits to identify: | 4549 | Escrow deficiency for funds advanced: | $142.07 | Projected escrow shortage: | $4,503.60 | Total monthly payment: | $3,526.97 |
| Creditor: | THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK,AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWMBS INC., CHL MORTGAGE PASS-THROUGH TRUST 2006-OA5, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-OA5 | Deferred Amount: | $6,283.33 | Less funds on hand: − | $0.00 | | |
| Servicer: | NewRez LLC d/b/a Shellpoint Mortgage Servicing | Less total funds on hand: − | $0.00 | Total prepetition arrearage: | $7,933.38 | | |
| Fixed accrual/daily simple interest/other: | Fixed | Total debt: | $415,577.71 | | | | |

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Starting Balance | | $0.00 | | | | | | $427,778.81 | $0.00 | ($3,640.87) | $0.00 | $47.04 |
| 04/01/2021 | $3,526.48 | | | Payment(s) Due Prior to Start | 03/01/2021 | $3,526.48 | | | | | | $427,778.81 | $0.00 | ($3,640.87) | $0.00 | $47.04 |
| 04/01/2021 | $3,526.48 | | | Regular Payment Due | 03/01/2021 | $7,052.96 | | | | | | $427,778.81 | $0.00 | ($3,640.87) | $0.00 | $47.04 |
| 04/06/2021 | | | $1,135.00 | Escrow Disbursement: Hazard Insurance | 03/01/2021 | $7,052.96 | | | | | | $427,778.81 | $0.00 | ($4,775.87) | $0.00 | $47.04 |
| 04/06/2021 | | $1,000.00 | | Payment Received | 03/01/2021 | $7,052.96 | | | | | $1,000.00 | $427,778.81 | $0.00 | ($4,775.87) | $0.00 | $1,047.04 |
| 04/06/2021 | | $500.00 | | Payment Received | 03/01/2021 | $7,052.96 | | | | | $500.00 | $427,778.81 | $0.00 | ($4,775.87) | $0.00 | $1,547.04 |
| 04/08/2021 | | $500.00 | | Payment Received | 03/01/2021 | $7,052.96 | | | | | $500.00 | $427,778.81 | $0.00 | ($4,775.87) | $0.00 | $2,047.04 |
| 04/11/2021 | | $500.00 | | Payment Received | 03/01/2021 | $7,052.96 | | | | | $500.00 | $427,778.81 | $0.00 | ($4,775.87) | $0.00 | $2,547.04 |
| 04/11/2021 | | $1,000.00 | | Payment Received | 03/01/2021 | $7,052.96 | | | | | $1,000.00 | $427,778.81 | $0.00 | ($4,775.87) | $0.00 | $3,547.04 |
| 04/12/2021 | | ($3,526.48) | | Payment Reversal | 03/01/2021 | $7,052.96 | | | | | ($3,526.48) | $427,778.81 | $0.00 | ($4,775.87) | $0.00 | $20.56 |

**Mortgage Proof of Claim Attachment: Additional Page**  (12/15)

Case number: 6:21-bk-15024-WJ

Debtor 1: Jose L. Granados

### Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04/12/2021 | | $3,526.48 | | Payment Received | 03/01/2021 | $3,526.48 | $2,026.79 | $712.96 | $786.73 | | | $425,752.02 | $0.00 | ($3,989.14) | $0.00 | $20.56 |
| 04/17/2021 | | $600.00 | | Payment Received | 04/01/2021 | $3,526.48 | | | | | $600.00 | $425,752.02 | $0.00 | ($3,989.14) | $0.00 | $620.56 |
| 04/22/2021 | | $600.00 | | Payment Received | 04/01/2021 | $3,526.48 | | | | | $600.00 | $425,752.02 | $0.00 | ($3,989.14) | $0.00 | $1,220.56 |
| 04/22/2021 | | $1,000.00 | | Payment Received | 04/01/2021 | $3,526.48 | | | | | $1,000.00 | $425,752.02 | $0.00 | ($3,989.14) | $0.00 | $2,220.56 |
| 04/24/2021 | | $600.00 | | Payment Received | 04/01/2021 | $3,526.48 | | | | | $600.00 | $425,752.02 | $0.00 | ($3,989.14) | $0.00 | $2,820.56 |
| 04/30/2021 | | ($2,820.56) | | Payment Reversal | 04/01/2021 | $3,526.48 | | | | | ($2,820.56) | $425,752.02 | | ($3,989.14) | $0.00 | $0.00 |
| 04/30/2021 | | $3,526.48 | | Payment Received | 04/01/2021 | $0.00 | $2,030.16 | $709.59 | $786.73 | | | $423,721.86 | | ($3,202.41) | $0.00 | $0.00 |
| 04/30/2021 | $0.08 | $0.08 | | Payment Received | 05/01/2021 | $0.00 | $0.08 | | | | | $423,721.78 | | ($3,202.41) | | $0.00 |
| 05/01/2021 | $3,526.48 | | | Regular Payment Due | 05/01/2021 | $3,526.48 | | | | | | $423,721.78 | | ($3,202.41) | | $0.00 |
| 05/28/2021 | | $3,526.48 | | Payment Received | 05/01/2021 | $0.00 | $2,033.55 | $706.20 | $786.73 | | | $421,688.23 | | ($2,415.68) | | $0.00 |
| 06/01/2021 | $3,526.48 | | | Regular Payment Due | 06/01/2021 | $3,526.48 | | | | | | $421,688.23 | | ($2,415.68) | $0.00 | $0.00 |
| 06/17/2021 | | | $136.99 | Late Fee | 06/01/2021 | $3,526.48 | | | | | | $421,688.23 | | ($2,415.68) | $136.99 | $0.00 |
| 06/30/2021 | | $3,526.48 | | Payment Received | 06/01/2021 | $0.00 | $2,036.94 | $702.81 | $786.73 | | | $419,651.29 | | ($1,628.95) | $136.99 | $0.00 |
| 07/01/2021 | $3,545.25 | | | Regular Payment Due | 07/01/2021 | $3,545.25 | | | | | | $419,651.29 | | ($1,628.95) | $136.99 | $0.00 |
| 07/17/2021 | | | $136.99 | Late Fee | 07/01/2021 | $3,545.25 | | | | | | $419,651.29 | | ($1,628.95) | $273.98 | $0.00 |
| 07/30/2021 | | $3,545.25 | | Payment Received | 07/01/2021 | $0.00 | $2,040.33 | $699.42 | $805.50 | | | $417,610.96 | | ($823.45) | $273.98 | $0.00 |
| 08/01/2021 | $3,545.25 | | | Regular Payment Due | 08/01/2021 | $3,545.25 | | | | | | $417,610.96 | | ($823.45) | $273.98 | $0.00 |
| 08/17/2021 | | | $136.99 | Late Fee | 08/01/2021 | $3,545.25 | | | | | | $417,610.96 | | ($823.45) | $410.97 | $0.00 |
| 08/28/2021 | | $3,545.25 | | Payment Received | 08/01/2021 | $0.00 | $2,043.73 | $696.02 | $805.50 | | | $415,567.23 | | ($17.95) | $410.97 | $0.00 |
| 09/01/2021 | $2,739.75 | | | Regular Payment Due | 09/01/2021 | $2,739.75 | | | | | | $415,567.23 | | ($17.95) | $410.97 | $0.00 |
| 09/01/2021 | $3,545.25 | | | Regular Payment Due | 09/01/2021 | $6,285.00 | | | | | | $415,567.23 | | ($17.95) | $410.97 | $0.00 |
| 09/17/2021 | | | $136.99 | Late Fee | 09/01/2021 | $6,285.00 | | | | | | $415,567.23 | | ($17.95) | $547.96 | $0.00 |
| 09/21/2021 | | | | Petition Date | 09/01/2021 | $6,285.00 | | | | | | $415,567.23 | | ($17.95) | $547.96 | |
| 09/25/2021 | | $3,545.25 | | Payment Received | 09/01/2021 | $2,739.75 | $2,047.14 | $692.61 | $805.50 | | | $413,520.09 | | $787.55 | $547.96 | $0.00 |
| 10/01/2021 | $3,545.25 | | | Regular Payment Due | 10/01/2021 | $6,285.00 | | | | | | $413,520.09 | | $787.55 | $547.96 | $0.00 |
| 10/28/2021 | | $3,545.25 | | Payment Received | 10/01/2021 | $2,739.75 | $2,050.55 | $689.20 | $805.50 | | | $411,469.54 | | $1,593.05 | $547.96 | $0.00 |
| 11/01/2021 | $3,545.25 | | | Regular Payment Due | 11/01/2021 | $6,285.00 | | | | | | $411,469.54 | | $1,593.05 | $547.96 | $0.00 |
| 11/29/2021 | | | $4,155.82 | Escrow Disbursement: County Tax | 11/01/2021 | $6,285.00 | | | | | | $411,469.54 | | ($2,562.77) | $547.96 | $0.00 |

**Mortgage Proof of Claim Attachment: Additional Page**  (12/15)

Case number: 6:21-bk-15024-WJ

Debtor 1: Jose L. Granados

| Part 5: Loan Payment History from First Date of Default | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Account Activity | | | | | How Funds Were Applied / Amount Incurred | | | | | Balance After Amount Received or incurred | | | | |
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 12/01/2021 | $3,545.25 | | | Regular Payment Due | 11/01/2021 | $9,830.25 | | | | | | $411,469.54 | $0.00 | ($2,562.77) | $547.96 | $0.00 |
| 12/12/2021 | | $3,545.25 | | Payment Received | 11/01/2021 | $6,285.00 | $2,053.97 | $685.78 | $805.50 | | | $409,415.57 | $0.00 | ($1,757.27) | $547.96 | $0.00 |
| 12/31/2021 | $4.20 | $4.20 | | Payment Received | 12/01/2021 | $6,285.00 | | | $4.20 | | | $409,415.57 | $0.00 | ($1,753.07) | $547.96 | $0.00 |
| 01/01/2022 | $3,545.25 | | | Regular Payment Due | 12/01/2021 | $9,830.25 | | | | | | $409,415.57 | $0.00 | ($1,753.07) | $547.96 | $0.00 |
| 01/06/2022 | | $3,545.25 | | Payment Received | 12/01/2021 | $6,285.00 | $2,057.39 | $682.36 | $805.50 | | | $407,358.18 | $0.00 | ($947.57) | $547.96 | $0.00 |
| 02/05/2022 | | $3,545.25 | | Payment Received | 01/01/2022 | $2,739.75 | $2,060.82 | $678.93 | $805.50 | | | $405,297.36 | $0.00 | ($142.07) | $547.96 | $0.00 |
| 02/28/2022 | | | | Case Conversion | 02/01/2022 | $2,739.75 | | | | | | $405,297.36 | $0.00 | ($142.07) | $547.96 | $0.00 |

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | Jose L. Granados |
| Debtor 2<br>(Spouse, if filing) | Victoria Ann Gutierrez Vaughn |
| United States Bankruptcy Court for the: | Central    District of    California<br>(State) |
| Case number | 6:21-bk-15024-WJ |

# Mortgage Proof of Claim Attachment: Addendum

**Additional Claim Itemization:**

| Loan History Date | Actual Date Incurred | Description | Amount |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**POC Special Language:**

NewRez LLC DBA Shellpoint Mortgage Servicing services the underlying mortgage loan and note for the property referenced in this proof of claim for BANK OF NEW YORK AS TRUSTEE FOR CWMBS 2006-OA5. In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK,AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWMBS INC., CHL MORTGAGE PASS-THROUGH TRUST 2006-OA5, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-OA5.

# CERTIFICATE OF SERVICE OF PROOF OF CLAIM

I hereby certify that a true and correct copy of the foregoing document has been served upon the following parties in interest on or before May 9, 2022 via electronic notice unless otherwise stated:

**Debtor**                    *Via U.S. Mail*
Jose L. Granados
6158 Royal Diamond Ct
Corona, CA 92880

**Debtor**                    *Via U.S. Mail*
Victoria Ann Gutierrez Vaughn
6158 Royal Diamond Ct
Corona, CA 92880

**Debtors' Attorney**         *Via U.S. Mail*
Gilbert A. Diaz
Law Office of Gilbert A Diaz Jr
3685 Main Street Ste 325
Riverside, CA  92501

**Chapter 13 Trustee**        *Via U.S. Mail*
Rod Danielson
3787 University Avenue
Riverside, California 92501

Respectfully Submitted,

/s/ Mukta Suri
Mukta Suri

# ADJUSTABLE RATE NOTE

### (MTA-Twelve Month Average Index - Payment Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT  THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

November 29, 2005        CHINO        California
[Date]        [City]        [State]

6158 ROYAL DIAMOND COURT
CORONA, CA  92880
[Property Address]

## 1  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U S  $ 399,950 00        (this amount is called "Principal"), plus interest, to the order of Lender  The Principal amount may increase as provided under the terms of this Note but will never exceed (    459,942 50, which represents 115%    ) of the Principal amount I originally borrowed  This is called the "Maximum Limit "  Lender is SECURED BANKERS MORTGAGE COMPANY, A PARTNERSHIP

I will make all payments under this Note in the form of cash, check or money order

I understand that Lender may transfer this Note  Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder "

## 2  INTEREST

### (A)  Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid  I will pay interest at a yearly rate of  1 5000%  The interest rate I will pay may change

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note

### (B)  Interest Rate Change Dates

The interest rate I will pay may change on the   1st   day of   January 2006   , and on that day every month thereafter  Each date on which my interest rate could change is called an "Interest Rate Change Date "  The new rate of interest will become effective on each Interest Rate Change Date  The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3

### (C)  Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index  The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H 15)" (the "Monthly Yields")  The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12  The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index"

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information  The Note Holder will give me notice of this choice

### (D)  Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding Three and 450/1000     percentage point(s)    3 450% ("Margin") to the Current Index  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0 125%)  This rounded amount will be my new interest rate until the next Interest Rate Change Date  My interest rate will never be greater than   9 9500 %  Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin

## 3  PAYMENTS

### (A)  Time and Place of Payments

I will make a payment every month

I will make my monthly payments on the    1st   day of each month beginning on January 01, 2006     I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal  If, on   December 01, 2035   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date "

I will make my monthly payments at 14761 CALIFA STREET, VAN NUYS, CA  91411

or at a different place if required by the Note Holder

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U S $ 1,380 31        unless adjusted under Section 3 (F)

**(C)  Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the        1st        day of  January 2007        , and on that day every 12th month thereafter  Each of these dates is called a "Payment Change Date " My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment  The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below  If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below

**(D)  Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date  The result of this calculation is called the "Full Payment "Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7 5% of my prior monthly payment  This 7 5% limitation is called the "Payment Cap " This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument  The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1 075  The result of this calculation is called the "Limited Payment " Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment  I also have the option to pay the Full Payment for my monthly payment

**(E)  Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments  For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2  For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3 (A)

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to        115        percent of the Principal amount I originally borrowed  My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases  In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment  This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7 5% Payment Cap  The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate

**(G)  Required Full Payment**

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again  I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date

**(H)  Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are **greater** than the Minimum Payment, which are called "Payment Options " I may be given the following Payment Options

    (i)    **Interest Only Payment**  the amount that would pay the interest portion of the monthly payment at the current interest rate  The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment

    (ii)    **Fully Amortized Payment.** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments

    (iii)    **15 Year Amortized Payment**  the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments  This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term

These Payment Options are only applicable if they are greater than the Minimum Payment

**4    NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice

**5    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due  A payment of Principal only is known as a "Prepayment "  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note  If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments  My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment  However, any reduction due to my partial Prepayment may be offset by an interest rate increase

**6    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me that exceeded permitted limits will be refunded to me  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me  If a refund reduces Principal, the reduction will be treated as a partial Prepayment

**7    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)  Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder  The amount of the charge will be 5 0000% of my overdue payment of Principal and Interest  I will pay this late charge promptly but only once on each late payment

**(B)  Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount  The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law  These expenses include, for example, reasonable attorneys' fees

**8    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address

**9    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note  The Note Holder may enforce its rights under this Note against each person individually or against all of us together  This means that any one of us may be required to pay all the amounts owed under this Note

## 10  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor "Presentment" means the right to require the Note Holder to demand payment of amounts due "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid

## 11  SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note  Some of these conditions are described as follows

**Transfer of the Property or a Beneficial Interest in Borrower**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law  Lender also shall not exercise this option if (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption  Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
JOSE GRANADOS                                    -Borrower

_____ (Seal)
                                                 -Borrower

**PAY TO THE ORDER OF**

Countrywide  Bank  N A                          _____ (Seal)
                                                 -Borrower
**WITHOUT RECOURSE: SECURED BANKING**
**MORTGAGE COMPANY, A PARTNE**
_____ (Seal)
                                                 -Borrower
**VALERIE FRIEND**
**LOAN FUNDER**                                 _____ (Seal)

_____ (Seal)

Pay to the order of:

Countrywide Home Loans, Inc.

Without Recourse
Countrywide Bank, N.A.

By _____
Laurie Meder, SVP

Pay to the order of:

_____

Without Recourse
Countrywide Home Loans, Inc.

By _____
Michele Sjolander, SVP

PAY TO THE ORDER OF

DATE  November 29, 2005
BORROWER  JOSE GRANADOS, A SINGLE MAN

PROPERTY ADDRESS  6158 ROYAL DIAMOND COURT
CORONA, CA  92880

# PREPAYMENT PENALTY ADDENDUM

THIS PREPAYMENT PENALTY ADDENDUM is dated   November 29, 2005   , and is incorporated into and amends and supplements the Note of the same date (the "Note") given by

SECURED BANKERS MORTGAGE COMPANY, A PARTNERSHIP

(the "Lender")  The Note is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") covering the property (the "Property") identified in the Security Instrument

The section of the Note entitled "Borrower's Right to Prepay" is replaced with the following new section

BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due  A prepayment of all of the unpaid Principal is known as a "Full Prepayment "  A prepayment of only part of the unpaid Principal is known as a "Partial Prepayment "  When I make a Partial or Full Prepayment, I will tell the Note Holder in writing that I am doing so

Subject to the Prepayment Penalty specified below, I may make a Full Prepayment or Partial Prepayments of my obligation  The Note Holder will use all of my prepayments to reduce the amount of Principal that I owe under the Note  If I make a Partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment

**If within the first       THIRTY-SIX  (36)        months after the execution of this Note, I make prepayment(s), the total of which exceeds twenty (20) percent of the original Principal amount of this Note, I agree to pay a Prepayment Penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) during the twelve (12) month period immediately preceding the date of the prepayment exceeds twenty (20) percent of the original Principal amount of this Note.  Interest will be calculated using the rate in effect at the time of prepayment  I will pay this Prepayment Penalty regardless of whether I sell the Property or refinance the loan with the same Lender or Note Holder.**

All other terms and conditions of the above referenced Note remain in full force and effect

_____
JOSE GRANADOS

_____

_____

_____

_____

_____

_____

Multistate Prepayment Penalty Addendum – (H-PPP)



Upon recording return to:
Shellpoint Mortgage Servicing
55 Beattie Place Suite 110 (MS 157)
Greenville, SC 29601

**[Space Above This Line For Recording Data]**

# MODIFICATION AGREEMENT

Borrower ("I"): Jose Granados

Lender or Servicer ("Lender"): NewRez LLC D/B/A Shellpoint Mortgage Servicing as Attorney in Fact for BANK OF NEW YORK AS TRUSTEE FOR CWMBS 2006-OA5

Date of mortgage, deed of trust, or security deed ("Mortgage") and Note: 11/29/2005

Loan Number:

Property Address ("Property"): 6158 Royal Diamond Court, Corona, CA 92880

If my representations and covenants in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return the original versions of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.

   B. The Property has not been condemned.

   C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage.

   D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Modification Program ("Program")).

   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct.

   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so.

   G. I have made or will make all payments required under a Trial Period Plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents.

   B. The Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date, as set fourth in Section 3, has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 02/01/2020 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a Trial Period Plan, this modification will not take effect. The first modified payment will be due on 02/01/2020.

   A. The Maturity Date will be 03/01/2036.

   B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, ("Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $453,822.19 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

---

1 If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Case 6:21-bk-15024-WJ will begin on 03-21 in the 105/09/22 as Entered 10/25/22 16:58:16 Page 16
payment on the New Principal Balance. Exhibit B, 0 of Page: 17 reflect schedule for the modified Loan is as
follows:

| Number of Monthly Payments | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|---|---|---|---|---|---|---|
| 36 | 2% | 01/01/2020 | $2,739.75 | $783.72 May adjust periodically | $3,523.47 May adjust periodically | 02/01/2020 |
| 12 | 3% | 01/01/2023 | $2,916.51 | May adjust periodically | May adjust periodically | 02/01/2023 |
| 146 | 3.5% | 01/01/2024 | $3,000.97 | May adjust periodically | May adjust periodically | 02/01/2024 |

*The escrow payments may be adjusted periodically in accordance with applicable law; therefore, my total monthly payment may change accordingly.

The above terms in this Section 3.C shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step, or simple interest rate.

I understand that if I have a pay option adjustable rate mortgage loan, upon modification the minimum monthly payment option, the interest-only, or any other payment options will no longer be offered. The monthly payments, as described in the above payment schedule for my modified Loan, will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

    D  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

    E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default, the interest that will be due will be the rate set forth in Section 3.C.

4.  **Additional Agreements.** I understand and acknowledge that:

    A.  All persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased, (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the Divorce Decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents), or (iii) the Lender has waived this requirement in writing.

    B.  This Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

    C.  I must comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

    D.  This Agreement constitutes notice that the Lender's waiver as to payment of escrow items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

    E  All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

    F.  As of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

    G  As of the Modification Effective Date, the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

    H.  As of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

    I  I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.



this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

K. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

L. Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

M. If any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

N. The mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

MODIFICATION AGREEMENT                    *(page 3 of 5 pages)*

Space Below This Line For Individual Acknowledgement

_____ (Seal) 1-15-20 (Date)
Jose Granados

Signed, acknowledged and delivered in the presence of:

Witness Victoria a Mujunnz-Vaughda (Seal) Witness_____ (Seal)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Riverside

**C. WILLIAMS NOTARY PUBLIC**

On Jan. 15, 2020 before me, _____, a Notary Public, personally appeared _____Jose Granados_____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal, this 15th day of Jan, 20 20

Notary Signature_____ (Seal)

Witness In re Camille De Anda (Seal)
**C. WILLIAMS NOTARY PUBLIC**
Typed/Printed Name: _____           (Official Seal)

Notary Public, State of: California

(VA Notaries) Reg. No.: 2146132

My Commission Expires: 4-9-20

C. WILLIAMS
Comm. #2146132
Notary Public - California
Riverside County
Comm. Expires Apr 9, 2020

**Space Below this Line for Corporate Acknowledgement**

NewRez LLC D/B/A Shellpoint Mortgage Servicing as Attorney in Fact for BANK OF NEW YORK AS TRUSTEE FOR
CWMBS 2006-OA5

**Authorized Signer** (Lender) _____Jerhi Cal_____ (Seal)

**Printed Name/Title** ____Tachives Austin_____ **Supervisor**

Signed, acknowledged and delivered in the presence of:

Witness _____ (Seal) Witness _____ (Seal)

State of _____ SC Shelby Saunders      Bryan Thompson

County of _____ Greenville

I certify _____Tachives Austin_____ personally appeared before me this _17_ day of
____Janry____, 20_20_ and acknowledged that he or she is an authorized signer for NewRez LLC D/B/A Shellpoint Mortgage
Servicing as Attorney in Fact for BANK OF NEW YORK AS TRUSTEE FOR CWMBS 2006-OA5. I have personal knowledge
of the identity of said officer, acknowledging to me that he or she voluntarily signed the foregoing document on behalf of the
corporation for the purposes stated therein and in the capacity indicated.

Witness my hand and official seal, this _17_ day of ____Janry____, 20_20_.

**Notary Signature**_____ (Seal)

Witness _____ (Seal) Shelby Saunders

Typed/Printed Name:_____        (Official Seal)

Notary Public, State of: _____
                    MATTHEW D. SADLON
(VA Notaries) Reg. No.: _ Notary Public, State of South Carolina
                    My Commission Expires 9/6/2029

My Commission Expires:_____

RECORDING REQUESTED BY
FIRST SOUTHWESTERN TITLE COMPANY

DOC #
12/06/2005 08:00A Fee:57.00
Page 1 of 17
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder



**RECORDING REQUESTED BY**

AND WHEN RECORDED MAIL TO

SBMC
14761 CALIFA STREET
VAN NUYS, CA 91411-3107

# DEED OF TRUST

T

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated November 29, 2005 , together with all Riders to this document.

**(B) "Borrower"** is JOSE GRANADOS, A SINGLE MAN

Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is SECURED BANKERS MORTGAGE COMPANY
Lender is a A PARTNERSHIP                            organized and existing under
the laws of CALIFORNIA                              . Lender's address is
14761 CALIFA STREET, VAN NUYS, California 91411

**(D) "Trustee"** is T.D. SERVICE CO., A CALIFORNIA CORPORATION

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated November 29, 2005 . The Note states that Borrower owes Lender Three Hundred Ninety Nine Thousand Nine Hundred Fifty and no/100
Dollars (U.S. $ 399,950.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than December 01, 2035 .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**CALIFORNIA**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3005 1/01
GREATLAND ■

*(Page 1 of 12 pages)*

To Order Call: 1-800-530-9393 □

J.G.

Description: Riverside,CA Document - Year.          Page: 1 of 17
Order: j Comment:

**(H)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider       [ ] Condominium Rider                  [ ] Second Home Rider

[ ] Balloon Rider               [ ] Planned Unit Development Rider     [ ] Other(s) [specify]

[ ] 1-4 Family Rider            [ ] Biweekly Payment Rider

**(J)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** **"Escrow Items"** means those items that are described in Section 3.

**(N)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the    COUNTY
[Type of Recording Jurisdiction]

of              RIVERSIDE                  :
        [Name of Recording Jurisdiction]

LOT 223, OF TRACT NO. 29207, IN THE CITY OF CORONA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 326, PAGE(S) 5-12 OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

which currently has the address of              6158 ROYAL DIAMOND COURT
                                                            [Street]

        CORONA         , California        92880        ("Property Address"):
        [City]                            [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

**CALIFORNIA**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                    **Form 3005 1/01**
                                                                                    GREATLAND ■
                            *(Page 3 of 12 pages)*                    To Order Call: 1-800-530-9393

Description: Riverside,CA Document - Year.          Page: 3 of 17
Order: j Comment:

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.    Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.    Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in



Description: Riverside,CA Document - Year.          Page: 4 of 17
Order: j Comment:

writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.    Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.    Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

**CALIFORNIA**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

*(Page 5 of 12 pages)*

Form 3005 1/01
GREATLAND ■
To Order Call: 1-800-530-9393

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this

CALIFORNIA—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

*(Page 6 of 12 pages)*

Form 3005 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □

Description: Riverside,CA Document - Year    Page: 6 of 17
Order: j Comment:

Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period,

Description: Riverside,CA Document - Year         Page: 7 of 17
Order: j Comment:

Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this

Description: Riverside,CA Document - Year            Page: 8 of 17
Order: j Comment:

Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale

CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

*(Page 9 of 12 pages)*

Form 3005 1/01
GREATLAND ■
To Order Call: 1-800-530-9393

Description: Riverside,CA Document - Year            Page: 9 of 17
Order: j Comment:



of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance

CALIFORNIA—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**　　　　Form 3005 1/01
GREATLAND ■
*(Page 10 of 12 pages)*　　　To Order Call: 1-800-530-9393

Description: Riverside,CA Document - Year         Page: 10 of 17
Order: j Comment:

affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**CALIFORNIA**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

*(Page 11 of 12 pages)*

Form 3005 1/01

GREATLAND ■
To Order Call: 1-800-530-9393□



Description: Riverside,CA Document - Year          Page: 11 of 17
Order: j Comment:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 12 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
JOSE GRANADOS                    -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                    -Borrower


MAILING ADDRESS OF TRUSTOR(S):


Witness:                                        Witness:

_____                  _____


State of California                              )
County of  San Bernardino                        )

    On  November 29, 2005          before me,  Cheryl Keithley, Notary Public
personally appeared
JOSE GRANADOS

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____

CHERYL A. KEITHLEY
Comm. # 1533536
NOTARY PUBLIC - CALIFORNIA
Orange County
My Comm. Expires Dec. 11, 2008


CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                 Form 3005 1/01
                                                                                    GREATLAND ■
                              *(Page 12 of 12 pages)*                    To Order Call: 1-800-530-9393 □

## ADJUSTABLE RATE RIDER
### (MTA-Twelve Month Average Index - Payment Caps)

THIS ADJUSTABLE RATE RIDER is made this        29th        day of     November 2005    , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to ("Lender") of the same date and covering the property described in the Security Instrument and located at:  6158 ROYAL DIAMOND COURT, CORONA, CA  92880

[Property Address]

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agrees as follows: SECURED BANKERS MORTGAGE COMPANY, A PARTNERSHIP

### A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for changes in the interest rate and the monthly payments, as follows:

### 2.   INTEREST

#### (A)  Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      1.5000 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of the Note.

#### (B)  Interest Rate Change Dates

The interest rate I will pay may change on the      1st      day of     January 2006      , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

#### (C)  Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal

**PayOption MTA ARM Rider**

**10/04**
GreatDocs™
To Order Call: 1-800-968-5775

Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D)  Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding Three and 450/1000          percentage point(s)       3.450 % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than       9.9500 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

### 3.   PAYMENTS

#### (A)  Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the       1st       day of each month beginning on January 01, 2006                    . I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on       December 01, 2035       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 14761 CALIFA STREET, VAN NUYS, CA 91411

or at a different place if required by the Note Holder.

#### (B)  Amount of My Initial Monthly Payments

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 1,380.31          unless adjusted under Section 3 (F).

#### (C)  Payment Change Dates

My monthly payment may change as required by Section 3(D) below beginning on the       1st       day of       January 2007      , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**PayOption MTA ARM Rider**

Page 2 of 5

10/04

GreatDocs™
To Order Call: 1-800-968-5775

**(D)  Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E)  Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3 (A).

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to    115    percent of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G)  Required Full Payment**

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H)  Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are **greater** than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

**PayOption MTA ARM Rider**

Page 3 of 5

10/04

GreatDocs™
To Order Call: 1-800-968-5775

(i)    **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)    **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii)   **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

## B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**10/04**

GreatDocs™
To Order Call: 1-800-968-5775

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
JOSE GRANADOS                                        -Borrower

_____ (Seal)
                                                     -Borrower

_____ (Seal)
                                                     -Borrower

_____ (Seal)
                                                     -Borrower

_____ (Seal)

_____ (Seal)

**PayOption MTA ARM Rider**                Page 5 of 5

10/04
GreatDocs™
To Order Call: 1-800-968-5775

Recording Requested By:
**Bank of America**
Prepared By:  **Diana De Avila**
**1800 Tapo Canyon Road**
**Simi Valley, CA 93063**
**800-444-4302**
When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN**
**1 CoreLogic Drive**
**Westlake, TX 76262-9823**

08/07/2012 04:00 PM Fees: $21.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: CARAGON

Property Address:
**6158 Royal Diamond Ct**
**Corona, CA 92880-8873**

This space for Recorder's use

MERS Phone #:  888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** does hereby grant, sell, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWMBS, INC. CHL MORTGAGE PASS-THROUGH TRUST 2006-OA5, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-OA5** whose address is **C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:            **SECURED BANKERS MORTGAGE COMPANY**
Original Borrower(s):       **JOSE GRANADOS, A SINGLE MAN**
Original Trustee:           **T.D. SERVICE CO., A CALIFORNIA CORPORATION**
Date of Deed of Trust:      **11/29/2005**
Original Loan Amount:       **$399,950.00**

Recorded in **Riverside County, CA** on: **12/6/2005**, book **N/A**, page **N/A** and instrument number **2005-1008058**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
**8- 6-12**

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____

Martha Munoz Vice President

State of **California**
County of **Ventura**

On **AUG 0 6 2012** before me, **VAZRIK SARAFIANS** , Notary Public, personally appeared
**Martha Munoz**
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity
(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: **VAZRIK SARAFIANS**
My Commission Expires: **NOV/06/2013**          (Seal)

VAZRIK SARAFIANS
Commission # 1867732
Notary Public - California
Los Angeles County
My Comm. Expires Nov 6, 2013

DocID#

06/06/2014 09:42 AM Fees: $25.00
Page 1 of 1
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: LCWEATHERS

TRUSTEE CORPS
17100 Gillette Ave
Irvine, CA 92614

## SUBSTITUTION OF TRUSTEE

WHEREAS, JOSE GRANADOS, A SINGLE MAN was the original Trustor(s), T.D. SERVICE CO., A CALIFORNIA CORPORATION was the original Trustee and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for SECURED BANKERS MORTGAGE COMPANY, its successors and assigns, was the original Beneficiary under that certain Deed of Trust dated November 29, 2005 and recorded on December 6, 2005 as Instrument No. 2005-1008058 of official records in the Office of the Recorder of Riverside County, California;

WHEREAS, the undersigned current Beneficiary, desires to substitute a new Trustee under said Deed of Trust in place of and instead of said original Trustee, or Successor Trustee, thereunder in the manner in said Deed of Trust provided;

NOW THEREFORE, **The Bank of New York Mellon FKA The Bank of New York as Trustee for the Certificateholders of CWMBS, Inc. CHL Mortgage Pass-Through Trust 2006-OA5, Mortgage Pass-Through Certificates, Series 2006-OA5** hereby substitutes **MTC Financial Inc. dba Trustee Corps**, whose address is 17100 Gillette Ave, Irvine, CA 92614, as Trustee under said Deed of Trust.

Dated:  6/2/2014        **New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing as servicer for The Bank of New York Mellon FKA The Bank of New York as Trustee for the Certificateholders of CWMBS, Inc. CHL Mortgage Pass-Through Trust 2006-OA5, Mortgage Pass-Through Certificates, Series 2006-OA5**

By:

STATE OF South Carolina
COUNTY OF Greenville

On June 2, 2014 before me, Michael Thomas , Notary Public,
personally appeared Jacqueline Gonzalez
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of South Carolina
that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Notary Public in and for said County and State
Michael Thomas
Greenville, South Carolina

**MICHAEL THOMAS**
**Notary Public, State of South Carolina**
**My Commission Expires 8/9/2022**

# shellpoint
### A DIVISION OF newrez

Shellpoint Mortgage Servicing
Servicing
PO Box 10826
Greenville, SC  29603 0826
For Inquiries:  (800) 365-7107

JOSE GRANADOS
6158 Royal Diamond Court
Corona CA  92880

Analysis Date:                    February 28, 2022

Property Address:
6158 Royal Diamond Court
Corona, CA  92880

## Annual Escrow Account Disclosure Statement - Account History

The following is an overview of your escrow account with Shellpoint Mortgage Servicing. It contains  the history of escrow payments made on your behalf in the prior year, and a snapshot of the anticipated disbursements for the coming year  Any potential adjustments due to increases or decreases with your escrow items may affect your monthly escrow payment  If your escrow payment increases, your monthly payment will also increase. If the escrow payment decreases, your mortgage payment will decrease

| Payment Information | Contractual | Effective Mar 01, 2022 |
| --- | --- | --- |
| P & I Pmt: | $2,739.75 | $2,739.75** |
| Escrow Pmt: | $0.00 | $787.22 |
| Other Funds Pmt: | $0.00 | $0.00 |
| Asst. Pmt (-): | $0.00 | $0.00 |
| Reserve Acct Pmt: | $0.00 | $0.00 |
| Total Payment | $2,739.75 | $3,526.97 |

| Prior Esc Pmt | July 01, 2021 |
| --- | --- |
| P & I Pmt: | $2,739.75 |
| Escrow Pmt: | $805.50 |
| Other Funds Pmt: | $0.00 |
| Asst. Pmt (-): | $0.00 |
| Resrv Acct Pmt: | $0.00 |
| Total Payment | $3,545.25 |

| Escrow Balance Calculation | |
| --- | --- |
| Due Date: | February 01, 2022 |
| Escrow Balance: | $0.00 |
| Anticipated Pmts to Escrow: | $0.00 |
| Anticipated Pmts from Escrow (-): | $0.00 |
| Anticipated Escrow Balance: | $0.00 |

| Shortage/Overage Information | Effective Mar 01, 2022 |
| --- | --- |
| Upcoming Total Annual Bills | $9,446.64 |
| Required Cushion | $1,574.44 |
| Required Starting Balance | $4,503.60 |
| Escrow Shortage | -$4,503.60 |
| Surplus | $0.00 |

**Cushion Calculation:** Because Shellpoint Mortgage Servicing does not set your tax amounts or insurance premiums, your escrow balance contains a cushion of 1,574.44. A cushion is an additional amount of funds held in your escrow in order to prevent the balance from becoming overdrawn when an increase in the disbursement amount occurs. Your lowest monthly balance should not be below 1,574.44 or 1/6 of the anticipated payment from the account.

** The terms of your loan may result in changes to the monthly principal and interest payments during the year.

This is a statement of actual activity in your escrow account from July 2021 to Feb 2022.  Last year's anticipated activity (payments to and from your escrow account) is next to the actual activity.

| | Payments to Escrow | | Payments From Escrow | | | Escrow Balance | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Date | Anticipated | Actual | Anticipated | Actual | Description | Required | Actual |
| | | | | | Starting Balance | 2,178.47 | (1,628.95) |
| Jul 2021 | 726.18 | 805.50 | | * | | 2,904.65 | (823.45) |
| Aug 2021 | 726.18 | 805.50 | | * | | 3,630.83 | (17.95) |
| Sep 2021 | 726.18 | 805.50 | | * | | 4,357.01 | 787.55 |
| Oct 2021 | 726.18 | 805.50 | | * | | 5,083.19 | 1,593.05 |
| Nov 2021 | 726.18 | | | * | | 5,809.37 | 1,593.05 |
| Nov 2021 | | | | 4,155.82 | * County Tax | 5,809.37 | (2,562.77) |
| Dec 2021 | 726.18 | 805.50 | 3,789.55 | * County Tax | | 2,746.00 | (1,757.27) |
| Dec 2021 | | 4.20 | | * Int on Escrow Pmt | | 2,746.00 | (1,753.07) |
| Jan 2022 | 726.18 | 805.50 | | * | | 3,472.18 | (947.57) |
| Feb 2022 | 726.18 | 805.50 | | * | | 4,198.36 | (142.07) |
| | | | | | Anticipated Transactions | 4,198.36 | (142.07) |
| Feb 2022 | | P | | | | | (142.07) |
| | $5,809.44 | $5,642.70 | $3,789.55 | $4,155.82 | | | |

An asterisk (*) indicates a difference from a previous estimate either in the date or the amount  If you want a further explanation, please call our toll-free number.
P - The letter (P) beside an amount indicates that the payment or disbursement has not yet occurred but is estimated to occur as shown.

Shellpoint Mortgage Servicing
For Inquiries: (800) 365-7107

| | Analysis Date: | February 28, 2022 |

## Annual Escrow Account Disclosure Statement - Projections for Coming Year

This is an estimate of activity in your escrow account during the coming year based on payments anticipated to be made to and from your account

| Date | Anticipated Payments | | | Escrow Balance | |
|------|---------------------|-------------|-------------|-------------|----------|
| | To Escrow | From Escrow | Description | Anticipated | Required |
| | | | Starting Balance | 0.00 | 4,503.60 |
| Mar 2022 | 787.22 | | | 787.22 | 5,290.82 |
| Apr 2022 | 787.22 | 4,155.82 | County Tax | (2,581.38) | 1,922.22 |
| May 2022 | 787.22 | 1,135.00 | Hazard | (2,929.16) | 1,574.44 |
| Jun 2022 | 787.22 | | | (2,141.94) | 2,361.66 |
| Jul 2022 | 787.22 | | | (1,354.72) | 3,148.88 |
| Aug 2022 | 787.22 | | | (567.50) | 3,936.10 |
| Sep 2022 | 787.22 | | | 219.72 | 4,723.32 |
| Oct 2022 | 787.22 | | | 1,006.94 | 5,510.54 |
| Nov 2022 | 787.22 | | | 1,794.16 | 6,297.76 |
| Dec 2022 | 787.22 | 4,155.82 | County Tax | (1,574.44) | 2,929.16 |
| Jan 2023 | 787.22 | | | (787.22) | 3,716.38 |
| Feb 2023 | 787.22 | | | 0.00 | 4,503.60 |
| | $9,446.64 | $9,446.64 | | | |

(Please keep this statement for comparison with the actual activity in your account at the end of the escrow accounting computation year)

Your ending balance from the last month of the account history (escrow balance anticipated) is (0.00). Your starting
balance (escrow balance required) according to this analysis should be $4,503.60. This means you have a shortage of 4,503.60.
This shortage may be collected from you over a period of 12 months or more unless the shortage is less than 1 month's
deposit, in which case we have the additional option of requesting payment within 30 days. We have decided to do nothing.
We anticipate the total of your coming year bills to be9,446.64. We divide that amount by the number of payments expected during the coming year to
obtain your escrow payment.

| New Escrow Payment Calculation | |
|-------------------------------|--------|
| Unadjusted Escrow Payment | $787.22 |
| Surplus Reduction: | $0.00 |
| Shortage Installment: | $0.00 |
| Rounding Adjustment Amount: | $0.00 |
| Escrow Payment: | $787.22 |

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt please be advised that this notice is to advise you of the status of your mortgage lo
This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applica
bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien agains
collateral property, which has not been discharged in your bankruptcy.

**Notice of Error or Information Request Address**

You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loanIf you want to request information about your
or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Information Request, please write to us at the following address

Shellpoint Mortgage Servicing
PO Box 10826
Greenville, SC 29603 0826

After Recorded Return To:

NewRez LLC d/b/a Shellpoint Mortgage Servicing

75 Beattie Place, Suite 300

Greenville, SC 29601

Attention: Legal Department

|||||||||||||||||||||||||||||||||||||||||||||||||||| 2019033073
                                                        4 Pgs
P/ATTY   Book: DE 2565 Page: 1241 - 1244
May 7, 2019  09:53:00 AM
Rec: $15.00
FILED IN GREENVILLE COUNTY, SC *Tinthy of Henry*

## LIMITED POWER OF ATTORNEY

### KNOW ALL PERSONS BY THESE PRESENTS:

THAT, BANK OF AMERICA, N.A. ("Owner"),[1] a national banking association located at 1800 Tapo Canyon Rd., Simi Valley, CA, 93063 by these presents does hereby make, constitute and appoint NewRez LLC, d/b/a Shellpoint Mortgage Servicing ("Subservicer"), a Delaware limited liability company located at 75 Beattie Place, Suite 300, Greenville, SC 29601, to be Owner's true and lawful attorney-in-fact, and hereby grants Subservicer authority and power to take, through its duly authorized officers, the Actions (as such term is defined herein) in Owner's name, place, and stead. This limited power of attorney ("Limited Power of Attorney") is given in connection with and relates solely to that certain Flow Subservicing Agreement dated September 10, 2012 (the "Agreement"), between Owner and Resurgent Capital Services, LP d/b/a Resurgent Mortgage Servicing, pursuant to which Subservicer has the duty to provide servicing, administration, and management and disposition services with respect to certain mortgage loans ("Mortgage Loans") owned by Owner (the "Servicing Arrangement").[2] Each of the Mortgage Loans comprises a promissory note evidencing a right to payment and performance secured by a security interest or other lien on real property ("Property") evidenced by one or more mortgages, deeds of trust, deeds to secure debt or other forms of security instruments (each, a "Security Instrument"). The assignment of a Security Instrument, as used herein, shall also include the assignment of the beneficial interest under a deed of trust.

As used above, the term "Actions" shall mean and be limited to the following acts, in each case with respect to one or another of the Mortgage Loans or the Property and as mandated or permitted by federal, state or local laws or other legal requirements or restrictions—including without limitation federal and state debt collection laws—applicable to Owner or Subservicer in connection with mortgage loans serviced by Subservicer or on behalf of Owner as owner:

  1. Demand, sue for, recover, collect and receive each and every sum of money, debt, account and interest (which now is or hereafter shall become due and payable) belonging to or

---

[1] This Limited Power of Attorney is intended to cover Actions, as such term is defined herein, taken in the name of: Bank of America, N.A., or Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP, formerly known as Countrywide Home Loans Servicing LP.

[2] Effective February 1, 2014, Resurgent Capital Services, LP assigned all of its rights and delegated all of its performance under the Agreement to Subservicer.

LIMITED POWER OF ATTORNEY TO NEWREZ LLC, D/B/A SHELLPOINT MORTGAGE SERVICING

THIS INSTRUMENT PREPARED BY AMIE ELDRED 901 S. RANCHO DR., LAS VEGAS, NV 89106

claimed by Owner in respect of the Mortgage Loans and Property, and to use or take any lawful means for recovery by legal process or otherwise, including but not limited to the substitution of trustee under a deed of trust, the preparation and issuance of statements of breach, notices of default, and/or notices of sale (or any other statement or notice that is now or hereafter becomes necessary or appropriate to protect or enforce Owner's interest in the Mortgage Loans and Property), filing proofs of claim, motions for relief from the automatic stay or other writings in a bankruptcy proceeding, taking deeds in lieu of foreclosure, negotiating and entering into "cash for keys" agreements, evicting and foreclosing on the Properties.

2. Subordinate the lien of a mortgage or deed of trust (i) for the purpose of refinancing Mortgage Loans, where applicable, or (ii) to an easement in favor of a public utility company or a government agency or unit with powers of eminent domain, including but not limited to the execution of partial satisfactions and releases and partial reconveyances reasonably required for such purpose, and the execution or requests to the trustees to accomplish the same.

3. Execute and/or file such documents and take such action as is proper and necessary to defend Owner in litigation and to resolve any litigation where Subservicer has an obligation to defend Owner.

4. Transact business of any kind regarding the Mortgage Loans, as Owner's act and deed, to contract for, purchase, receive and take possession and evidence of title in and to the Property and/or to secure payment of a promissory note or performance of any obligation or agreement relating thereto.

5. Execute, complete or file bonds, Security Instruments and other contracts, agreements and instruments regarding the borrowers and/or the Property, including but not limited to the execution of releases, satisfactions, reconveyances, assignments, loan modification agreements, loan assumption agreements, subordination agreements, property adjustment agreements, and other instruments pertaining to Security Instruments, bills of sale and execution of deeds and associated instruments, if any, conveying or encumbering the Property, in the interest of Owner.

6. Correct or otherwise remedy any errors or deficiencies contained in any transfer or reconveyance documents provided or prepared by Owner or a prior transferor.

7. Convey the Property to the mortgage insurer, or close the title to the Property to be acquired as real estate owned, or convey title to real estate owned property ("REO Property").

8. Execute and deliver the following documentation with respect to the sale of REO Property acquired through a foreclosure or deed-in lieu of foreclosure, including, without limitation: listing agreements; purchase and sale agreements; grant/warranty/quit claim deeds or other deeds causing the transfer of title of the property to a party contracted to purchase same; escrow instructions; and any and all documents necessary to effect the transfer of REO Property.

9. Perform all steps necessary to realize on insurance proceeds, including but not limited to insurance proceeds relating to foreclosures, short sales, deeds in lieu of foreclosure, sale of

REO Property, and the exercise of any rights of Owner under any insurance agreement.

10. Endorse all checks, drafts and/or other negotiable instruments made payable to Owner as payments by borrowers in connection with the Mortgage Loans.

With respect to the Actions, Owner gives to said attorney-in-fact full power and authority to execute such instruments and to do and perform all and every act and thing requisite, necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully, to all intents and purposes, as Owner itself might or could do, and hereby does ratify and confirm all that said attorney-in-fact shall lawfully do or cause to be done by authority hereof. All Actions taken by said attorney-in-fact on or after January 7, 2019, which the said attorney-in-fact could properly have taken pursuant to this Limited Power of Attorney, will be, and hereby are, ratified and affirmed. Any Action taken pursuant to this Limited Power of Attorney shall be binding on Owner and Owner's successors and assigns.

Owner represents to those dealing with such attorney-in-fact that they may rely upon this Limited Power of Attorney until they receive actual notice of termination or revocation thereof or unless an instrument of revocation has been made in writing. Any and all third parties dealing with Subservicer as Owner's attorney-in-fact may rely completely, unconditionally and conclusively on the authority of Subservicer, and need not make any inquiry about whether Subservicer is acting pursuant to the Servicing Arrangement. Any purchaser, title insurance company, public official or other third party may rely upon a written statement by Subservicer that any subject mortgage loan or real estate owned by Owner or by Subservicer for Owner as a result of the termination of the related Mortgage Loan, is subject to the authority and power conferred to the Subservicer pursuant to the Servicing Arrangement and this Limited Power of Attorney.

Except as authorized in the foregoing paragraphs, nothing contained herein shall be construed to grant Subservicer the power to (i) initiate or defend any suit, litigation, or proceeding in the name of Owner or be construed to create a duty of Owner to initiate or defend any suit, litigation, or proceeding in the name of Subservicer, (ii) incur or agree to any liability or obligation in the name or on behalf of Owner, or (iii) execute any document or take any action on behalf of, or in the name, place, or stead of, Owner.

*[Remainder of page intentionally left blank]*

LIMITED POWER OF ATTORNEY TO NEWREZ LLC, D/B/A SHELLPOINT MORTGAGE SERVICING

THIS INSTRUMENT PREPARED BY AMIE ELDRED 901 S. RANCHO DR., LAS VEGAS, NV 89106

REF: ID 4678

3

**IN WITNESS WHEREOF,** Bank of America, N.A. has executed this Limited Power of Attorney this 2nd day of May, 2019.

BANK OF AMERICA, N.A.

By:

Name: Brigitte T. Long

Title: Vice President

Witness:

Name: Amy Hamlin

Title: Assistant Vice President

Witness:

Name: Ana Hoover

Title: Officer

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

STATE OF CALIFORNIA      :
                                              : ss.
VENTURA COUNTY           :

On May 2, 2019, before me, L. Nichols, Notary Public, personally appeared Brigitte T. Long, Vice President of Bank of America, N.A., a national banking association, on behalf of said national association, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

L. NICHOLS
Notary Public - California
Ventura County
Commission # 2231035
My Comm. Expires Feb 11, 2022

Notary Public Name: L. Nichols
My commission expires: February 11, 2022

LIMITED POWER OF ATTORNEY TO NEWREZ LLC, D/B/A SHELLPOINT MORTGAGE SERVICING

THIS INSTRUMENT PREPARED BY AMIE ELDRED 901 S. RANCHO DR., LAS VEGAS, NV 89106

4

REF: ID 4678

```
<DOCUMENT>
<TYPE>EX-99.1
<SEQUENCE>2
<FILENAME>efc6-0991_exhibit991.txt
<TEXT>
```

EXHIBIT 99.1
------------

The Pooling and Servicing Agreement

```
<PAGE>
```

EXECUTION COPY

========================

CWMBS, INC.,
Depositor
COUNTRYWIDE HOME LOANS, INC.,
Seller
PARK GRANADA LLC,
Seller
PARK MONACO INC.,
Seller
PARK SIENNA LLC,
Seller
COUNTRYWIDE HOME LOANS SERVICING LP,
Master Servicer
and
THE BANK OF NEW YORK,
Trustee

------------------------------------

POOLING AND SERVICING AGREEMENT
Dated as of February 1, 2006

------------------------------------

CHL MORTGAGE PASS-THROUGH TRUST 2006-OA5

MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA5

========================

```
<PAGE>
```